**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| LINTON CRYSTAL TECHNOLOGIES CORP.,<br><br>Plaintiff,<br><br>v.<br><br>ZHEJIANG JINGSHENG MECHANICAL & ELECTRICAL CO., LTD.,<br><br>Defendant. | NO. 2:26-cv-000863-JRG<br><br>JURY TRIAL DEMANDED |

**FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Linton Crystal Technologies Corp. alleges patent infringement against Defendant Zhejiang Jingsheng Mechanical & Electrical Co., Ltd. as follows:

**PARTIES**

1. Plaintiff Linton Crystal Technologies Corp. ("Linton") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 2180 Brighton Henrietta Town Line Road, Rochester, New York 14623.

2. Linton develops and supplies crystal growth equipment and related technologies for use in the semiconductor and photovoltaic industries.

3. Defendant Zhejiang Jingsheng Mechanical & Electrical Co., Ltd. ("JSG"), whose Chinese legal name is 浙江晶盛机电股份有限公司, is a corporation organized and existing under the laws of the People's Republic of China. JSG's registered address is No. 99 Wuxing West Road, Cao'e Street, Shangyu District, Shaoxing, Zhejiang Province, People's Republic of China 312300.

4. JSG develops, manufactures, markets, and supplies equipment for the semiconductor and photovoltaic industries, including silicon crystal-growth furnaces. JSG identifies "Zhejiang Jingsheng Mechanical & Electrical Co., Ltd." as its English-language corporate name and "JSG" as its English-language abbreviation.

5. On information and belief, JSG conducts business in the United States directly and/or through affiliates, distributors, agents, customers, installers, service providers, and other commercial partners and distribution channels.

6. JSG has purposefully directed substantial commercial activities toward the United States, including by manufacturing and shipping CZ crystal-growth pullers and associated equipment for delivery to customers in the United States. U.S. import records identify JSG as the shipper of repeated shipments expressly described as containing "CZ PULLER" equipment to U.S.

importers.

## JURISDICTION AND VENUE

7. This action arises under the patent laws of the United States, including 35 U.S.C. §§ 271 and 281–285.

8. This Court has original subject-matter jurisdiction over Linton's federal claims pursuant to 28 U.S.C. §§ 1331 and 1338(a).

9. JSG is subject to specific personal jurisdiction in Texas because it has purposefully directed substantial commercial activities involving crystal-growth equipment toward the Texas market. Among other things, publicly reported market information identifies JSG as a supplier of monocrystalline crystal-growth pullers and associated equipment for a large-scale photovoltaic manufacturing project in Texas and reports that JSG secured an order to supply crystal pullers and associated equipment for a 10 GW production line, with deliveries scheduled in 2026.

10. JSG's Texas-directed activities concern the same category of CZ crystal-growth equipment at issue in this action. On information and belief, JSG has manufactured and supplied, and continues to manufacture and supply, CZ crystal-growth equipment for delivery, installation, operation, and use by customers in Texas. Linton's claims arise out of or relate to JSG's purposeful commercial activities directed toward Texas, including JSG's supply and anticipated supply of the accused class of crystal-growth equipment for use in Texas.

11. JSG has purposefully availed itself of the privilege of conducting commercial activity in Texas and has sought and obtained commercial benefits from the Texas market. In light of JSG's deliberate commercial activities directed toward Texas and the relationship between those activities and the claims asserted in this action, JSG reasonably could anticipate being haled into court in Texas, and the exercise of specific personal jurisdiction over JSG comports with due

process.

12. In the alternative, if JSG is not subject to personal jurisdiction in the courts of general jurisdiction of Texas or any other State, this Court has personal jurisdiction over JSG pursuant to Federal Rule of Civil Procedure 4(k)(2). Linton's patent-infringement claims arise under federal law. To the extent required by Rule 4(k)(2), Linton alleges in the alternative that JSG is not subject to personal jurisdiction in any State's courts of general jurisdiction. JSG nevertheless has purposefully directed substantial commercial activities toward the United States as a whole, including by manufacturing and supplying CZ crystal-growth pullers and associated equipment specifically for importation, delivery, installation, operation, and use in the United States. U.S. import records identify JSG as the shipper of repeated shipments of cargo expressly described as including "CZ PULLER" equipment to U.S. customers, as well as a shipment containing components expressly identified as modules used in a "SEED LIFTING MACHANISM." [sic] Linton's federal claims arise out of or relate to those United States-directed activities. Accordingly, exercising personal jurisdiction over JSG under Rule 4(k)(2) is consistent with the United States Constitution and laws.

13. Venue is proper in this District under 28 U.S.C. § 1391(c)(3) because JSG is not resident in the United States and may be sued in any judicial district.

## FACTUAL BACKGROUND

14. Linton has developed crystal growth equipment and technologies used in the production of semiconductor and photovoltaic materials.

15. Among the components of a CZ crystal growth system is a seed-lifting mechanism used to lift and rotate a seed and growing crystal during the crystal-growth process.

16. Seed-lifting systems commonly employ a cable coupled to a seed and a rotating

drum or spool that winds and unwinds the cable as the crystal is grown.

17. Linton developed improved seed-lifting technology that permits the drum to translate as it rotates, allowing the cable to be properly wound and unwound while reducing the size, weight, and complexity associated with conventional seed-lift mechanisms.

## ASSERTED PATENTS

18. On February 22, 2022, the United States Patent and Trademark Office duly and legally issued United States Patent No. 11,255,024, entitled "Seed Lifting and Rotating System for Use in Crystal Growth" (the "'024 Patent"). A true and correct copy of the '024 Patent is attached as Exhibit A.

19. The '024 Patent identifies John A. Reese and Joel C. Stefl as inventors.

20. Linton owns all right, title, and interest in and to the '024 Patent, including the right to enforce the '024 Patent and recover damages for infringement.

21. The '024 Patent is valid and enforceable.

22. The '024 Patent generally concerns technology used in seed-lifting mechanisms for crystal growth, including floating roller-guide assemblies used in connection with a rotating and translating drum.

23. Claim 1 of the '024 Patent is directed to a lift assembly for lifting a seed coupled to a cable. The claimed assembly includes, among other things, a lift housing forming a cable exit port; a drum positioned within the lift housing having a helical groove formed about its exterior surface; a floating roller-guide assembly; and a drive shaft coupled to the drum.

24. The floating roller-guide assembly recited in Claim 1 includes a mounting plate coupled to the lift housing and having a throughhole; a floating shaft coupled to the mounting plate and movable relative to the mounting plate in a direction generally perpendicular to the central

axis of the floating shaft; and a floating roller guide rotationally coupled about the floating shaft and positioned generally within the throughhole such that at least a portion of the floating roller guide is configured to engage the helical groove of the drum.

25. Claim 1 further requires the drive shaft to cause the drum to rotate and translate through engagement of the drum's helical groove with the floating roller guide. Linton asserts at least Claim 1 of the '024 Patent against JSG in this action.

26. On November 14, 2023, the United States Patent and Trademark Office duly and legally issued United States Patent No. 11,814,746, entitled "Seed Lifting and Rotating System for Use in Crystal Growth" (the "'746 Patent"). A true and correct copy of the '746 Patent is attached as Exhibit B.

27. The '746 Patent identifies John A. Reese and Joel C. Stefl as inventors.

28. The '746 Patent issued from a continuation of the application that resulted in the '024 Patent and shares a common specification and priority date with the '024 Patent.

29. Linton owns all right, title, and interest in and to the '746 Patent, including the right to enforce the '746 Patent and recover damages for infringement.

30. The '746 Patent is valid and enforceable.

31. The '746 Patent generally concerns technology for lifting a seed during crystal growth using a drum having a helical groove and a roller guide that engages the helical groove so that rotation of the drum causes the drum to translate along its axis.

32. For example, Claim 1 of the '746 Patent recites a lift assembly having, among other things: a lift housing forming a cable exit port; a drum positioned within the lift housing that forms a helical groove about its exterior surface and is both rotatable about and translatable along a central axis; a roller guide mounted to the lift housing and rotatable about an axis parallel to and

offset from the central axis of the drum, the roller guide engaging at least a portion of the helical groove and being fixed from translating along the central axis; and a drive shaft coupled to the drum and configured to cause the drum to rotate, such that rotation of the drum causes the drum to translate through engagement between the helical groove and the roller guide.

33. Linton asserts at least Claim 1 of the ’746 Patent against JSG in this action.

34. The ’024 Patent and the ’746 Patent are referred to collectively herein as the “Asserted Patents.”

## ACCUSED INSTRUMENTALITIES

35. JSG markets and supplies its crystal-growth equipment internationally, including to customers in the United States.

36. As used herein, the “Accused Products” include JSG CZ crystal-growth pullers imported into, sold, offered for sale, and/or used in the United States that incorporate the accused seed-lift architectures described herein, including JSG TDR160P-series crystal-growth pullers and other JSG CZ crystal-growth pullers incorporating those architectures. On information and belief, JSG manufactures the Accused Products outside the United States for delivery to, installation at, and use by customers within the United States.

37. Publicly available U.S. import records confirm that JSG has repeatedly shipped and supplied CZ crystal-growth pullers for importation into the United States. For example, between October 26 and November 22, 2024, multiple bills of lading identify Zhejiang Jingsheng Mechanical & Electrical Co., Ltd. as the shipper and JA Solar USA Inc. as the importer of cargo expressly described as including “CZ PULLER” equipment from Shanghai, China to ports in New York and New Jersey.

38. Those records reflect at least ten separate bills of lading during that approximately

one-month period covering 166 shipping containers of cargo described as including CZ pullers and associated equipment and components. Representative bills of lading include OERT201701N15340, OERT201701N15763, SZILSHZH24190859, and OERT201701N16372.

39. A separate JSG shipment to the same U.S. customer arriving on November 22, 2024 expressly identified components as “EMBEDDED PCS/PLC” modules “IN SEED LIFTING MACHANISM” [sic], further confirming JSG’s supply to the United States of equipment and components associated with the seed-lifting systems used in its CZ crystal-growth equipment.

40. These shipments are representative of JSG’s commercial supply of CZ crystal-growth equipment and related components to customers in the United States.

41. Linton and JSG directly compete for customers and projects in the market for CZ crystal-growth equipment, including major photovoltaic manufacturing projects in the United States. For example, Linton has competed to supply crystal-growth pullers and related production equipment for a substantial photovoltaic manufacturing project in the United States. On information and belief, public market reports subsequently identified JSG as having secured a substantial order to supply monocrystalline crystal-growth pullers and associated equipment for the same project. JSG’s infringement therefore causes and threatens concrete competitive harm to Linton, including lost sales and business opportunities, price pressure, harm to customer relationships, and erosion of Linton’s competitive position.

42. JSG has manufactured, sold and/or supplied CZ crystal-growth equipment for importation into the United States and has shipped such equipment directly to or for the benefit of customers in the United States. U.S. import records identify JSG as the shipper of multiple shipments expressly described as containing “CZ PULLER” equipment and identify U.S. companies, including JA Solar USA Inc., as importers of that equipment.

43. The "Accused Products" include JSG CZ silicon crystal-growth pullers that have been manufactured and supplied by JSG for importation into the United States, including TDR160P-series pullers and other JSG CZ pullers incorporating one or more of the accused seed-lift architectures described herein.

44. On information and belief, JSG has supplied multiple Accused Products to customers in the United States and continues to manufacture, market, offer, and/or supply Accused Products for delivery to and use by United States customers. On information and belief, JSG continues to manufacture and supply crystal-growth pullers for delivery and use in the United States, including substantial deliveries scheduled during 2026 for a photovoltaic manufacturing project in the United States.

45. U.S. import records concerning JSG's shipments separately identify components supplied to a U.S. customer as modules used in a "SEED LIFTING MACHANISM" [sic], corroborating that JSG supplies seed-lifting systems and associated components as part of its U.S.-directed CZ crystal-growth equipment business.

46. The Accused Products incorporating the accused seed-lift architectures described herein include a seed-lift assembly used to lift and rotate a seed and growing crystal during the crystal-growth process.

47. The seed-lift assembly includes a lift housing that forms a cable exit port through which a cable used to lift the seed extends.

48. The seed-lift assembly further includes a drum positioned within the lift housing. The drum forms a helical groove about its exterior surface and is configured both to rotate about and to translate along a central axis.

49. The Accused Products further include a roller guide mounted to the lift housing and

configured to rotate about a roller-guide axis.

50. The roller guide engages at least a portion of the helical groove formed on the exterior surface of the drum.

51. The roller-guide axis is parallel to and offset from the central axis of the drum, and the roller guide is fixed from translating along the central axis of the drum.

52. The Accused Products further include a drive shaft coupled to the drum and configured to cause the drum to rotate.

53. JSG seed-lift assemblies incorporating the accused roller-guide architecture include a housing-mounted roller guide that directly engages the helical groove formed around the drum. The roller guide remains fixed against translation along the drum's longitudinal axis while the spline shaft rotates the drum. As a result of the engagement between the roller guide and the drum's helical groove, rotation of the drum advances the drum axially relative to the lift housing.

54. Accordingly, on information and belief, Accused Products incorporating the accused roller-guide seed-lift architecture described above embody each limitation of at least Claim 1 of the '746 Patent.

55. On information and belief, based on photographs of JSG equipment and Linton's investigation, certain Accused Products incorporate a floating roller-guide assembly mounted to the lift housing.

56. The floating roller-guide assembly includes a mounting plate having a throughhole and a floating shaft carrying a floating roller guide. The floating roller guide is generally positioned within the throughhole of the mounting plate.

57. On information and belief, based on the visible mounting geometry and information provided by persons knowledgeable regarding the structure and operation of the JSG roller-guide

assembly, the floating shaft is movable relative to the mounting plate in a direction generally perpendicular to the central axis of the floating shaft, permitting the floating roller guide to move toward and away from the drum.

58. The floating roller guide is rotationally coupled about the floating shaft and positioned generally within the throughhole of the mounting plate such that at least a portion of the floating roller guide engages the helical groove formed about the exterior surface of the drum.

59. The accused lift assembly further includes a drive shaft coupled to the drum and configured to rotate the drum. On information and belief, during operation, engagement between the drum's helical groove and the floating roller guide causes the rotating drum to translate along its central axis.

60. Accordingly, on information and belief, Accused Products incorporating JSG's floating roller-guide architecture embody each limitation of at least Claim 1 of the '024 Patent.

61. JSG designed and manufactures the Accused Products for operation as CZ crystal-growth pullers and has supplied Accused Products for installation and operation by customers in the United States.

**COUNT I – INFRINGEMENT OF THE '024 PATENT**

62. Linton incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

63. Linton owns all right, title, and interest in and to the '024 Patent, including the right to enforce the '024 Patent and recover damages for its infringement.

64. The '024 Patent is valid and enforceable.

65. The Accused Products incorporating JSG's floating roller-guide seed-lift architecture practice at least Claim 1 of the '024 Patent. An exemplary infringement claim chart

for the ’024 Patent is attached as Exhibit C.

66. On information and belief, based on photographs of JSG equipment and information concerning the structure and operation of the depicted assembly, the accused seed-lift assembly includes a lift housing forming a cable exit port and a drum positioned within the lift housing having a helical groove formed about its exterior surface.

67. The accused assembly further includes a floating roller-guide assembly mounted to the lift housing. The floating roller-guide assembly includes a mounting plate having a throughhole and a floating shaft carrying a floating roller guide. On information and belief, the floating shaft is movable relative to the mounting plate in a direction generally perpendicular to the central axis of the floating shaft, permitting the floating roller guide to move toward and away from the drum. The floating roller guide is rotationally coupled about the floating shaft and positioned generally within the throughhole of the mounting plate such that at least a portion of the floating roller guide engages the helical groove formed about the exterior surface of the drum.

68. The accused assembly further includes a drive shaft coupled to the drum and configured to rotate the drum. On information and belief, during operation, engagement between the drum’s helical groove and the floating roller guide causes the rotating drum to translate along its central axis.

69. On information and belief, JSG has directly infringed and continues to directly infringe the ’024 Patent by engaging in one or more acts prohibited by 35 U.S.C. § 271(a), including selling and/or offering to sell Accused Products incorporating the accused floating roller-guide seed-lift architecture within the United States and importing and/or using such Accused Products within the United States.

70. JSG’s infringement of the ’024 Patent includes activities involving JSG CZ silicon

crystal-growth pullers incorporating the accused floating roller-guide seed-lift architecture described above, including Accused Products manufactured and supplied by JSG for delivery to and use by customers in the United States.

71. JSG's infringement has caused and continues to cause Linton damages and other injury.

72. Linton is entitled to recover damages adequate to compensate for JSG's infringement of the '024 Patent in an amount to be determined at trial, but in no event less than a reasonable royalty, together with interest and costs as provided by 35 U.S.C. § 284.

73. Unless JSG is enjoined, Linton will continue to suffer harm from JSG's infringement of the '024 Patent, including harm to Linton's competitive position, customer relationships, and business opportunities, for which monetary damages alone are inadequate.

**COUNT II – INFRINGEMENT OF THE '746 PATENT**

74. Linton incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

75. Linton owns all right, title, and interest in and to the '746 Patent, including the right to enforce the '746 Patent and recover damages for its infringement.

76. The '746 Patent is valid and enforceable.

77. Accused Products incorporating the accused roller-guide seed-lift architecture described above practice at least Claim 1 of the '746 Patent. Among other things, the accused seed-lift assembly includes a lift housing forming a cable exit port; a drum positioned within the lift housing having an exterior helical groove and configured to rotate about and translate along its central axis; a roller guide mounted to the lift housing that engages the drum's helical groove, rotates about an axis parallel to and offset from the drum's central axis, and is fixed from

translating along the drum's central axis; and a drive shaft coupled to the drum and configured to cause the drum to rotate. During operation, rotation of the drum causes the helical groove to advance relative to the roller guide, thereby causing the drum to translate along its central axis. An exemplary infringement claim chart for the '746 Patent is attached as Exhibit D.

78. On information and belief, JSG has directly infringed and continues to directly infringe the '746 Patent by engaging in one or more acts prohibited by 35 U.S.C. § 271(a), including by selling and/or offering to sell Accused Products incorporating the accused roller-guide seed-lift architecture within the United States and importing and/or using such Accused Products within the United States.

79. JSG's infringement of the '746 Patent includes, at minimum, activities involving JSG CZ silicon crystal-growth pullers incorporating the accused roller-guide seed-lift architecture described above, including TDR160P-series pullers manufactured and supplied by JSG for delivery to and use by customers in the United States.

80. JSG's infringement has caused and continues to cause Linton damages and other injury.

81. Linton is entitled to recover damages adequate to compensate for JSG's infringement in an amount to be determined at trial, but in no event less than a reasonable royalty, together with interest and costs as provided by 35 U.S.C. § 284.

82. Unless JSG is enjoined, Linton will continue to suffer harm from JSG's ongoing infringement, including harm to Linton's competitive position, customer relationships, and business opportunities, for which monetary relief alone is inadequate.

**KNOWLEDGE, INDUCED INFRINGEMENT, AND WILLFULNESS**

83. At minimum, no later than service of this Complaint, JSG will have actual

knowledge of the ’746 and ’024 Patents and of Linton’s allegations that the Accused Products infringe those patents.

84. JSG supplies Accused Products for installation and operation by customers in the United States and provides manuals, instructions, technical support, installation assistance, service, and/or other assistance that encourages and facilitates importation and operation of the Accused Products in their intended manner. When operated as intended, Accused Products incorporating the respective accused seed-lift architectures practice the asserted claims as alleged above.

85. To the extent JSG, after obtaining actual knowledge of the Asserted Patents and the infringement alleged herein, continues to supply Accused Products and affirmatively encourages their importation and operation in the United States through such manuals, instructions, installation assistance, technical support, or service, JSG knowingly induces direct infringement under 35 U.S.C. § 271(b).

86. JSG’s continued infringement after acquiring actual knowledge of the Asserted Patents and Linton’s infringement allegations has been deliberate and intentional. Linton therefore seeks enhanced damages under 35 U.S.C. § 284 to the extent warranted by the evidence developed in this action.

## PRAYER FOR RELIEF

WHEREFORE, Linton respectfully requests that the Court enter judgment in its favor and against JSG as follows:

A. Declaring that JSG has infringed one or more claims of the Asserted Patents;

B. Awarding Linton damages adequate to compensate for JSG’s past and continuing infringement of the Asserted Patents, in an amount to be determined at trial, but in no event less than a reasonable royalty;

C. Enhancing Linton's patent-infringement damages pursuant to 35 U.S.C. § 284 to the extent warranted by the evidence;

D. Awarding Linton pre-judgment and post-judgment interest as permitted by law;

E. Permanently enjoining JSG and its officers, agents, servants, employees, attorneys, and all persons acting in concert or participation with them from further infringement of the Asserted Patents;

F. Awarding Linton its costs and, to the extent warranted, its reasonable attorneys' fees pursuant to 35 U.S.C. § 285; and

G. Awarding such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Linton demands a trial by jury on all issues so triable.

Date: September 24, 2026

*/s/ Shawn G. Hansen w/ permission*
*William E. Davis, III*

William E. Davis, III
Texas Bar No. 24047416
bdavis@davisfirm.com
Ty Wilson
Texas Bar No. 24106583
twilson@davisfirm.com
**DAVIS FIRM, PC**
213 N. Fredonia Street, Suite 230
Longview, TX 75601
Tel: (903) 230-9090
Fax: (903) 230-9661

Shawn G. Hansen
California Bar No. 197033
(*pro hac vice* admission pending)
shansen@nixonpeabody.com
**NIXON PEABODY LLP**
300 South Grand Avenue, Suite 4100
Los Angeles, CA 90071-3151
Phone: (213) 629-6190

David R. Kocan
California Bar No. 303394
(*pro hac vice* admission pending)
dkocan@nixonpeabody.com

**NIXON PEABODY LLP**
1 Embarcadero Ctr.
San Francisco, CA 94111
Phone: (415) 984-8200

***Attorneys for Plaintiff***
***Linton Crystal Technologies Corp.***